Madden, Judge,
delivered the opinion of the court:
The plaintiff sues to recover just compensation for two steel dump scows requisitioned from it by the Government on or about January 16,1945, under the authority of section 902 of the Merchant Marine Act of 1936, as amended, 49 Stat. 2015, as amended by 53 Stat. 1254,46 TJ. S. C. 1242. The Govermnent has not paid the plaintiff anything on account of the scows. We have for determination what is just compensation for the taking.
The two scows were constructed for the plaintiff in 1929 at a delivered price of $38,360.27 each. They were of rectangular shape, 112 feet long, 34 feet wide and 12 feet deep. The steel plates on the sides were originally some five-eighths of an inch thick, and on the deck and bottom not quite so thick. They were riveted, rather than welded, together. Each had flotation tanks at both ends, and five pockets separated by bulkheads, in which pockets the mud which was to be removed was placed. The bottom of each pocket consisted of two doors, closed and fastened while the scow was being loaded and propelled, and opening downward by the release of a pawl when the mud was to be dumped. The scows had no propulsion machinery. They were moved by tugboats.
The scows were a part of the plaintiff’s fleet of mud scows which, together with the other necessary equipment, it used in dredging out the slips and channels at Camden, N. J., the port of Philadelphia. The plaintiff had 20 scows of the size requisitioned, that is, óf a capacity of about 560 cubic yards each, and 2 about twice as large. The removal of the 2 scows from the fleet seriously impaired the efficiency and the earning power of the plaintiff’s operations for several months, until it was able to obtain a large scow to replace the 2 that were taken.
*247 Tbe design of a mud scow is simple. It is built for and subjected to rough usage. The heavy buckets of the dredge which lift the mud from the bottom of the channel damage the decks and the timbers which are placed on the upper edges of the sides of the scow. The bumping of the scows against each other and against the tugs bend the steel plates of the sides. It needs occasional replacements of the timbers, of the chains and pulleys which operate the doors, and of other of its small number of working parts. It needs occasional painting, or coating with rust-preventing material.
Bottom-dump steel scows are practically never bought and sold in the market. If an operator needs a scow, he has it built for himself, and puts it into use. In our task of determining the fair value of the scows in question, then, we get no help from that best of standards, the market value. But we do get rather more help than is usual from one of the other standards, that of the cost of reproduction less depreciation. There being no styles in mud scows, they are not subject to the fluctuations in value resulting from improvements in design. The test of the value of such a vessel to the owner, or to anyone interested in acquiring it would seem to be, then, “How much wear does it have left in it?” If that can be reasonably determined, and if the cost of building a new one is known, the value can be fairly approximated.
The 1945 cost of constructing the scows here in question would have been approximately $68,000 each. The question of how much wear they had left in them in 1945 is not easy to determine. They had been in use, when requisitioned, for 15 years. The plaintiff had other similarly built scows in its fleet in 1950 which had been in use for 24 years, and it seemed that they would be good for 10 more years. The Government’s only expert on this question thought that such scows in fresh water should be good for 85 years. The waters in which the plaintiff’s scows operated were fresh waters, though the defendant’s expert claimed that they contained harmful pollution. All of this evidence is speculative, especially in view of the fact that there was no evidence that any scow of the type here in question had been withdrawn from service because it was decrepit by reason of age, since steel scows of this type were first made in about 1926.
*248 The Government urges that, as to the question oí depreciation, the plaintiff is hoist with its own petard, because it, in answering in writing questions submitted to it by the Government after the requisition, suggested.a useful life of 25 years and a depreciation rate of 4 percent for the scows. •In the same document, however* the plaintiff made a large claim for losses due to its being deprived of the use of the scows by their requisition. We think that the plaintiff’s answers to the questions, while admissible against it, are outweighed by the other evidence as to the probable useful life of the scows. We think they had a fair prospect of being useful for a total period of at least 33% years, and that depreciation should be computed at the rate of 3 percent per annum for the 15 years they had been in use when they were taken.
We have, then, a cost of reproduction of $68,000 for each scow, which sum, when depreciated by 45 percent, would give ús a depreciated value of $37,400. Deducting the expenditures shown in Finding 13 to have been necessary to put the scows in normal operating condition, we have a value of $33,900 for No. 106, and $33,400 for No. 107.
The Government urges that a deduction should be made for enhancement of value “due to the causes which necessitated the taking,” citing section' 902 (a) of the Merchant Marine Act of 1936. We think that the value which we have found does not include any deductible enhancement. The reproduction cost of $68,000 which we have found is an inflated cost, as compared with prewar costs, but the increase is due to higher prices for labor and steel, and not due to any competition of the Government in the market for dump scows or any comparable kind of vessel. See United States v. Cors, 337 U. S. 325.
■ The plaintiff is entitled to recover' $67,300 together with interest at 4 percent on that- amount, as a part of just compensation, from January 16, 1945, to the date of payment of this judgment. ■-
It is so ordered.
Howell, J.udge; Whitaker, Judge; Littleton, Judge; and Jones, GKief Judge, concur.